

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable William J. Lawson
Secretary of State
Austin, Texas

Attention:  Abner Lewis

Dear Sir:                        Opinion No. 0-4712
                                 Re:  Filing fees--Dallas Railway &
                                      Terminal Company.

        Your request for an opinion on the above stated
matter has been received and carefully considered by this
department.  We quote said request as follows:

        "We are enclosing you herein a letter from
    Burford, Ryburn, Hincks & Charlton, attorneys of
    Dallas, Texas, which has reference to the filing
    fees charged the above captioned corporation.

        "We find that on the 28th day of November,
    1917, an amendment was filed increasing the cap-
    ital stock from $100,000.00 to $2,750,000.00 and
    that a filing fee of $1,475.00 was paid at that
    time and then again on the 5th day of August, 1926,
    an amendment was filed increasing the capital stock
    from $2,750,000.00 to $4,750,000.00 and changing
    the name from Dallas Railway Company to Dallas Rail-
    way & Terminal Company.  At the time of the regis-
    tration of this amendment a fee of $1,150.00 was
    paid as filing fee and an additional $5.00 for five
    certificates.  On October 29, 1942 this department
    granted an amendment reducing the capital stock for
    which this department charged a fee of $200.00.

        "You will observe that this letter which we
    enclose for the first time refers to a fee of
    $2,500.00 being the maximum fee this department
    can charge.

        "The original charter of this corporation has
    been misplaced and from notation in the amendment

472

filed in August, 1926, it apparently had been mis-
placed before that date and we are therefore unable
to ascertain the amount of filing fee paid at the
time the charter was granted, but we do know that
the filing fees have exceeded $2,500.00 in the above
mentioned amendments.

"This department has heretofore adopted the
policy that upon the payment of $2,500.00 for fees
at any one time then and in that event there is no
charge for subsequent filings, but where the fees
are paid as and when filings are made that the usual
filing fee chargeable at the time of filing the
amendment is made.

"Will you please advise this department whether
or not the Statute means that after corporations
have reached the filing fee of $2500.00 whether this
department should stop taking additional fees or
are we correct in the policy adopted that when the
$2500.00 maximum fee is paid in one time then are
we authorized to make subsequent filings without
additional fees.

". . . ."

Article 3914, of the Revised Civil Statutes of
Texas, as amended by the Acts of 1931, is in part as follows:

"The Secretary of State is authorized and re-
quired to charge for the use of the State the fol-
lowing other fees:

"Upon filing each charter, amendment, or sup-
plement thereto of a channel and dock, railroad,
magnetic telegraph line, street railway or express
corporation, a filing fee of Two Hundred ($200.00)
Dollars, provided, that if the authorized capital
stock exceeds One Hundred Thousand ($100,000.00)
Dollars, an additional filing fee of Fifty Cents
for each One Thousand ($1,000.00) Dollars authorized
capital stock or fractional part thereof, after the
first One Hundred Thousand ($100,000.00) Dollars,
shall be paid.

". . . .

"The maximum filing fees to be paid by any domestic or foreign corporation shall be Twenty-five Hundred ($2500.00) Dollars.

". . . ."

In the case of General Motors Acceptance Corporation v. McCallum, Secretary of State, 10 S. W. (2d) 687, the Commission of Appeals was dealing with a foreign corporation that had applied for and received a permit to do business in Texas in January, 1920, its capital stock then being $2,000,000.00. In June, 1921, it filed an amendment of its charter increasing its capital stock to $4,000,000.00, and in connection therewith paid to the Secretary of State a filing fee of $2,040.00. In November, 1922, it tendered to the Secretary of State a copy of an amendment increasing its capital stock to $4,800,000.00, and in connection therewith tendered $460.00 as filing fees. This last sum was received by the Secretary of State, but upon the insistence that it was not a sufficient amount. In May, 1923, a copy of another amendment to the charter, increasing the capital stock to $6,000,000.00, was tendered for filing, but no filing or permit fee was tendered and filing thereof was refused. In February, 1924, a copy of the fourth amendment, increasing the capital stock to $7,600,000.00, was tendered for filing, but no permit or filing fee was made or offered, and the Secretary of State refused to file same. In April, 1924, a fifth amendment, increasing the capital stock to $9,000,000.00 was tendered, but no permit and filing fee was made or offered and the filing of this amendment was refused. On January 20, 1926, copies of all of said amendments were tendered and demand made that they be filed by the Secretary of State. No further payment of fees was made or offered, the corporation insisting that, since it had already paid as much as $2,500.00 in connection with the filing of its original charter and amendments, it had paid the maximum named in the statute; but the Secretary of State refused to file the copies thus tendered. Thereafter relator sought and secured permission to file this proceeding in mandamus against the Secretary of State and sought to compel her to file said copies of said amendments without further payment of fees or charges.

Relator contended that, under the statutes, it had paid to the Secretary of State all fees or charges properly collectible. The respondent contended that each separate filing of an amendment subsequent to the original filing was a separate event within the meaning of the statutes and entitled

the department to charge upon the basis of $10.00 for each additional $10,000.00 capital stock, and that the limitation of $2,500.00 referred only to the increased capital stock represented in such subsequent filing.

In passing upon said question, the Commission of Appeals held that such charges and fees are taxes and laid down the following rules in regard thereto:

"The purpose of the law being to place a tax upon the right of foreign corporations to do business within our borders, it must be interpreted in the light of constitutional limitations as to uniformity, and, when thus interpreted, it is plain, we think, that in all cases, whether upon one original filing or upon subsequent filing or filings of a copy or copies of charter or charter amendments no more can be charged or collected than the maximum of $2,500 named in the statute. We think the language 'in no event' means that under no circumstances can the applicant for a permit to transact business in the state be charged more than the maximum named.

"It is significant that it becomes the duty of the secretary of state, when a certified copy of the articles of incorporation has been filed and that officer has been satisfied by the showing made by the applicant that a permit shall be issued, good for a period of ten years, and that thereafter when such charter has been amended or supplemented, that a certified copy of such amendment or supplement shall be immediately filed with the secretary of state. There is no discretion whatever left with the secretary of state as to such supplemental filing. It is a requirement of the law for the protection of the public dealing with the corporation. The statutes do not contemplate a new permit or even an amendment of the permit previously issued. There is nothing to indicate that the secretary of state has any authority whatever to revoke, amend, or supplement the permit previously issued. This is a matter for judicial cognizance in the absence of statutory power in the secretary of state.

"The relator for its protection in the transaction of its business under its permit, is entitled

to have its amendments duly filed by the secretary
of state. The duty to file is a plain ministerial
act.

"It follows from what we have said that we
think the mandamus prayed for should be issued,
and we accordingly so recommend."

This ruling was also approved by the Commission of
Appeals in the case of Austin Nat. Bank of Austin v. Sheppard,
Comptroller of Public Accounts, 71 S. W. (2d) 242. In this
case the Barber Asphalt Company, a foreign corporation, had
been granted a permit to do business in Texas on March 7, 1919.
Its capital stock was $7,000,000.00 and it paid to the Secre-
tary of State a filing fee of $2,500.00, which was the maximum
fee required of foreign corporations. About March 31, 1922,
it amended its charter and increased its capital stock from
$7,000,000.00 to $10,000,000.00, and in due time it tendered
to the Secretary of State a copy of its amended charter, with
the request that same be filed. The Secretary of State demand-
ed an additional filing fee of $2,500.00 and refused to file
such amendment until such fee was paid. The asphalt company
protested the payment of such fee on the ground that it was
not due to be paid under our law. The protest was unavailing
and said fee was then paid. The court stated that from these
facts it was evident that the asphalt company was entitled to
have its amendments filed without the payment of a second fee
of $2,500.00, and that the Secretary of State acted under a
mistake of law in refusing to file such amendment until the
additional fee was paid. Therefore, that the transaction re-
sulted in the state receiving money into its Treasury that it
did not own and was not entitled to receive.

A claim for a refund of said $2,500.00 was presented
to the Claims Committee of the 43rd Legislature. Same being
approved it was included in the Miscellaneous Claims Bill and
passed by the Legislature and approved by the Governor. The
Comptroller issued a warrant to cover said $2,500.00 claim and
same was transferred to the Austin National Bank. The bank
presented said warrant to the Treasurer and payment thereof
was refused and this mandamus proceeding was then instituted
by the Austin National Bank. Such mandamus was granted and
the court held that the payment of said additional $2,500.00
filing fee by said asphalt company was illegal and should not
have been required.

It is the opinion of this department, therefore, that it is not necessary for either domestic or foreign corporations to pay the maximum filing fee of $2,500.00 at any one time, but that our statutes are complied with when the total filing fees paid by any such corporation amount to the sum of $2,500.00, whether made in one payment or in several payments, and that when said maximum sum has been so paid no further filing fees are due or should be collected. We call your attention to the fact, however, that the provision that such fee shall not exceed the sum of $2,500.00 was not contained in said statute as it was originally passed, and that such provision as to different corporations has been put in amendments to said law that have been passed at various times. The last amendment making said limitation apply to all domestic and foreign corporations was passed in 1931, but prior thereto said limitation was made to apply to different corporations at different times, one of said amendments having been passed in 1917 and another in 1919. In passing upon such filing fees to be paid by other corporations in the future, it will be necessary to take into consideration whether or not any of said fees were paid prior to 1917 or 1919.

As to the fee that should be paid by the Dallas Railway and Terminal Company for the filing of the last amendment, the facts stated by you show that a part of the filing fees paid by said company necessary to make up a total of $2,500.00 was paid on November 28, 1917. The law fixing a limit of $2,500.00 was not passed until 1919 and became effective on March 11, 1919. There is nothing in said law to show that it was intended that the Secretary of State, in passing upon whether or not the total fees of $2,500.00 had been paid, should take into consideration the payment of fees prior to the time this law became effective. Said company not having paid a total of $2,500.00 in filing fees since said law became effective, we still adhere to our opinion No. O-4917 and hold that the filing fee for such amendment is $200.00.

Trusting that this satisfactorily answers your inquiry, we are

APPROVED NOV 12, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Jas. W. Bassett*

Jas. W. Bassett
Assistant

JWB:mp